**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

Steven Craig Kelly and Jack Clark,
individually and on behalf of others           Case No. 08-cv-401
similarly situated,

        Plaintiffs,

v.

Bluegreen Corporation,

        Defendant.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CLASS CERTIFICATION AND JUDICIAL NOTICE**

---

**INTRODUCTION**

    Plaintiffs, who were employed by Defendant Bluegreen Corporation as sales representatives, bring this Motion for Conditional Certification pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). The two named Plaintiffs are joined by other sales representatives of Defendant who were denied minimum wage and overtime pay. Plaintiffs seek conditional certification to send judicial notice of this action to members of the putative collective class whose statutes of limitation continue to run while they are unaware of their rights.

    Plaintiffs also seek an Order requiring Defendant to produce a list within 10 days of the date this Motion is granted, in Microsoft Excel format, of the potential plaintiffs to whom judicial notice will be sent. Authorizing Notice to these sales representatives will provide them

with the opportunity to join this case, as contemplated by Congress and the United Sates Supreme Court, before their claims expire as a result of the running of their statute of limitations.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A. Procedural History

This lawsuit was filed in this District on July 17, 2008 by Steven Craig Kelly and Jack Clark, former sales representatives of Defendant.[1] They allege that Defendant misclassified sales representatives as overtime exempt in violation of the FLSA, and in some circumstances failed to pay them their minimum wages in violation of the FLSA.[2] Plaintiffs brought these claims on behalf of themselves and all other similarly situated sales representatives pursuant to the FLSA, 29 U.S.C. § 216(b).[3] On November 19, 2008, the Court denied Defendant's motion to transfer venue to the Southern District of Florida.[4]

Plaintiffs Kelly and Clark are joined by ten other sales representatives who have opted-in to this lawsuit.[5] At present the twelve Plaintiffs reside in six states.[6] This motion is accompanied by five Declarations of Plaintiffs who live in California, South Carolina, Wisconsin, Georgia and Pennsylvania.[7]

---

[1] Dkt. 1.

[2] Dkt. 1. While the merits are generally not considered at this stage of the litigation, the attached authority makes clear that Defendant's exemption defenses have no merit. See Davidson v. Orange Lake Country Club, Inc., 2008 WL 254136 (M.D. Fla. Jan. 29, 2008); see also FLSA 2007-4, Wage and Hour Opinion Letter (Jan. 25, 2007), attached as Exhibit 5 to Morgan Aff.

[3] Id.

[4] Dkt. 23.

[5] Morgan Aff. at ¶5. It is unclear, however, whether all of them will be part of the class that requires the sales representatives to be paid commissions only for some or all of their employment with Defendant. And, Jonas Shields, one of the opt-in Plaintiffs, has advised that he no longer wants to participate in the case.

[6] Morgan Dec. at ¶6.

[7] See generally Ex. 1, which comprises the Declarations of certain Plaintiffs in support of this motion. The Declarations are from Steven Kelly, David Rhodes, Jr., Janae Brown, David Grow, and Jack Clark.

### B. The Parties

Plaintiffs Kelly and Clark worked as sales representatives for Defendant during the applicable statutory period.[8] Defendant is a Massachusetts corporation doing business throughout the Unites States, including Wisconsin.[9] Its principal place of business is in Boca Raton, Florida.[10]

The "Resorts Division" of Defendant markets and sells vacation ownership plans.[11] The selling occurs at Sales Centers and Preview Centers in fourteen states.[12] Each Sales Center and Preview Center has a Director of Sales.[13] The Directors of Sales report to management-level executives on the National Sales and Marketing team who are located in Indianapolis, Indiana.[14] The Executive Vice President of National Sales and Marketing in Indiana reports to the Senior Vice President and President of Defendant's Resorts Division.[15]

Payroll for sales representatives is processed weekly in Florida and then provided to an outside vendor for issuance of payroll.[16] Defendant's Accounting Department in Florida processes the sales and then calculates sales representatives' commissions on such sales.[17]

### C. Plaintiffs and the Putative Class Members Share the Same Job Duties

Defendant currently employs 1,200 sales representatives at its Sales Centers and Preview Centers.[18] There are twenty-seven U.S.-based Sales Centers and Preview Centers, located in 14

---

[8] Dkt. 1
[9] Dkt. 12
[10] Id.
[11] See Dkt. 13-2 at ¶3.
[12] Id. at ¶4.
[13] Id. at ¶10.
[14] Id.
[15] Id. at ¶11.
[16] Id. at ¶13.
[17] Id.
[18] Id. at ¶6.

3

states.[19]   From July 14, 2005 to July 14, 2008, Defendant employed over 5,500 sales representatives across the country.[20]  The primary duty of sales representatives is to sell vacation ownership plans to prospective buyers.[21]

Sales representatives for Defendant sold vacation ownership plans to prospective customers by giving on-site resort tours to prospective customers.[22]  These tours included, but were not limited to, greeting prospective customers and providing an overview of Defendant and what its vacations were like; showing introductory films; giving computer tours of the resort location; and giving the actual tours of the resort property including a showing of the facilities and attractions that the resort property offers, as well as the actual time share unit.[23]  There was paperwork that needed to be done to complete a sale if a prospective customer was interested in purchasing a time share unit.[24]  In all, and assuming a prospective customer purchased a time share unit, the sales process could take as long as three to four hours (or more on certain occasions) to complete.[25]  All of the sales activities for sales representatives occurred at the sales office (where the prospective customers were typically greeted and shown the introductory video) or on the resort property.[26]

In addition to the duties described above, sales representatives regularly attended sales meetings.[27]  These meetings included discussions of the previous day's sales, discussions of the

---

[19] Id. at ¶¶4, 6.
[20] Id. at ¶9.
[21] Id. at ¶6; see also Kelly Dec., ¶7; Rhodes Jr. Dec., ¶7; Brown Dec., ¶7; Grow Dec., ¶7; Clark Dec., ¶7.
[22] Kelly Dec., ¶7; Rhodes Jr. Dec., ¶7; Brown Dec., ¶7; Grow Dec., ¶7; Clark Dec., ¶7.
[23] Kelly Dec., ¶7; Rhodes Jr. Dec., ¶7; Brown Dec., ¶7; Grow Dec., ¶7; Clark Dec., ¶7.
[24] Kelly Dec., ¶7; Rhodes Jr. Dec., ¶7; Brown Dec., ¶7; Grow Dec., ¶7; Clark Dec., ¶7.
[25] Kelly Dec., ¶7; Rhodes Jr. Dec., ¶7; Brown Dec., ¶7; Grow Dec., ¶7; Clark Dec., ¶7.
[26] Kelly Dec., ¶8; Rhodes Jr. Dec., ¶8; Brown Dec., ¶8; Grow Dec., ¶8; Clark Dec., ¶8.
[27] Kelly Dec., ¶9; Rhodes Jr. Dec., ¶9; Brown Dec., ¶9; Grow Dec., ¶9; Clark Dec., ¶9.

current day's tours, and addressed any preparatory work for the upcoming sales tours.[28] Sales representatives also sat in group presentations to prospective customers provided by other sales representatives.[29]

### D.     Sales Representatives Work Over Forty Hours a Week

Sales representatives work more than 40 hours per week.[30] In terms of compensation, the sales representatives in this putative class received commissions only during at least part of their time as employees of Defendant.[31] While Defendant maintained weekly pay periods, there was no set schedule as to when sales representatives were paid.[32] Indeed, sales representatives who were paid commissions only could go several weeks at a time without getting paid.[33] During the relevant time period, sales representatives were classified as exempt employees and ineligible for overtime compensation.[34]

## ARGUMENT

**I.    THIS ACTION SHOULD BE CONDITIONALLY CERTIFIED AND PLAINTIFFS SHOULD BE ALLOWED TO PROVIDE JUDICIAL NOTICE TO ALL SIMILARLY SITUATED SALES REPRESENTATIVES.**

### A.     Applicable Law

Plaintiffs seek conditional certification and court-facilitated notice in this collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA specifically contemplates Plaintiffs pursuing their claims collectively. 29 U.S.C. § 216(b). In Hoffmann-LaRoche Inc. v. Sperling,

---

[28] Kelly Dec., ¶9; Rhodes Jr. Dec., ¶9; Brown Dec., ¶9; Grow Dec., ¶9; Clark Dec., ¶9.
[29] Kelly Dec., ¶9; Rhodes Jr. Dec., ¶9; Brown Dec., ¶9; Grow Dec., ¶9; Clark Dec., ¶9.
[30] Kelly Dec., ¶4; Rhodes Jr. Dec., ¶4; Brown Dec., ¶4; Grow Dec., ¶4; Clark Dec., ¶4.
[31] Kelly Dec., ¶3; Rhodes Jr. Dec., ¶3; Brown Dec., ¶3; Grow Dec., ¶3; Clark Dec., ¶3.
[32] Kelly Dec., ¶3; Rhodes Jr. Dec., ¶3; Brown Dec., ¶3; Grow Dec., ¶3; Clark Dec., ¶3.; see also Ex. 2, attached to Morgan Aff.
[33] Kelly Dec., ¶3; Rhodes Jr. Dec., ¶3; Brown Dec., ¶3; Grow Dec., ¶3; Clark Dec., ¶3.
[34] Kelly Dec., ¶5; Rhodes Jr. Dec., ¶5; Brown Dec., ¶5; Grow Dec., ¶5; Clark Dec., ¶5.

493 U.S. 165, 169-70 (1989), the United States Supreme Court identified the main benefits of a collective action under § 216(b):

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.

Id. at 170.

In providing for a collective action, the FLSA indicates:

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The collective action mechanism in the FLSA provides for "one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." Shain v. Armour & Co., 40 F. Supp. 488, 490 (W.D. Ky. 1941).

In addressing a request for conditional certification of a collective action under the FLSA, courts consider whether the plaintiffs have demonstrated the existence of a definable class of plaintiffs who are "similarly situated." Hoffmann-La Roche, 493 U.S. at 170; Austin v. Cuna Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006) (Crabb, J.). While the FLSA does not provide a definition for "similarly situated," federal courts have developed a two-step approach, which this Court has adopted as the appropriate framework. Sjoblom v. Charter Communications, LLC, 2007 WL 4560541, at *7-8 (W.D. Wis. Dec. 19, 2007) (Crabb, J.) (citations omitted); Austin, 232 F.R.D. at 605.

In the first step, the plaintiff must show a "reasonable basis" for believing that he is similarly situated to potential class members. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. If such as showing is made, the court will conditionally certify the class and authorize judicial notice. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. At the close of discovery, typically upon a defendant's motion for "decertification," courts make a second determination of the similarly situated question to determine if the case should proceed to trial collectively. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. If the court finds certain opt-in plaintiffs are not similarly situated, it may dismiss them without prejudice. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. The court may decertify the entire class if none of the class members are similarly situated. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. If plaintiff demonstrates that the putative class members are similarly situated, however, the case proceeds to trial as a class action. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605.

Plaintiffs' burden to show that others are similarly situated is not high at this initial stage. Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605. They can meet their burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605 (internal quotations and citations omitted). In other words, there need only be "some factual nexus that connects [the plaintiffs] to other potential plaintiffs as victims of an unlawful practice." Sjoblom, 2007 WL 4560541, at *8; Austin, 232 F.R.D. at 605-606. In determining whether plaintiffs have made this initial showing, courts rely on the complaint and any affidavits submitted. Sjoblom, 2007 WL at 4560541, *8; Austin, 232 F.R.D. at 606. And courts generally do not need an overwhelming amount of support to grant the

motion. Shabazz v. Asurion Ins. Serv., 2008 WL 1730318, at *3 (M.D. Tenn. Apr. 10, 2008) (four declarations sufficient); see also Sipas v. Sammy's Fishbox, Inc., 2006 WL 1084556, at *2 (S.D.N.Y Apr. 24, 2006) (three affidavits and the contents of the complaint); Young v. Cooper Cameron Corp., 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (one affidavit sufficient when potential opt-ins all had some job and were all classified as exempt at over 108 facilities in 21 states); Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (seven affidavits demonstrating a "reasonable basis" sufficient); Guerra v. Big Johnson Concrete Pumping, Inc., 2006 WL 2290512, at *3-4 (S.D. Fla. May 17, 2006) (two affidavits constituted a "rudimentary showing of commonality" sufficient for conditional certification and judicial notice); DeAsencio v. Tyson Foods, Inc., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (four affidavits sufficient).

### B. Plaintiffs Easily Satisfy the Lenient "Similarly Situated" Standard.

Plaintiffs' motion is supported by declarations from named Plaintiffs and opt-in Plaintiffs in addition to the allegations in the Complaint. The evidence in the record confirms that Defendant's sales representatives are similarly situated because they share the same job duties and responsibilities and are subject to the same company-wide policy denying them overtime compensation and in some cases minimum wage compensation.

The evidence here far exceeds that which is necessary to meet the low "similarly situated" standard. The sales representatives perform the same job duties. They were subject to the same policy that violated the law: Defendant's classification of their position as exempt from overtime. Moreover, their primary duty is to sell vacation ownership plans to prospective customers. They accomplish this goal, largely, by giving on-site tours of the resort property and time share units. The sales process typically includes: greeting prospective customers and providing an overview of Defendant and what its vacations are like, showing introductory films,

8

giving computer tours of the resort location, and giving the actual resort property tour that includes a showing of the facilities and attractions that the resort property offers, as well as actual time share units. The tours regularly lead to paperwork and further time spent with those interested in purchasing a time share unit in order to consummate the sale. In addition to performing the duties that make up the sales process, sales representatives regularly attend sales meetings, mandatory training sessions, and presentations by other sales representatives.

In <u>Williams v. Trendwest Resorts, Inc.</u>, a court in the District of Nevada faced similar facts to those in this case when it granted conditional class certification for time share sales employees—many of whom were paid commissions only. 2006 WL 3690686, at *5-6 (D. Nev. Dec. 7, 2006). Relying on plaintiffs' affidavits, the court determined that plaintiffs were not eligible for overtime compensation and that there were occasions when plaintiffs were compensated less than the minimum wage. <u>Id.</u> at *5. The court also determined that that there were at least 300 employees working in one state at any one time. <u>Id.</u> On that basis alone, the court determined that Plaintiffs' claims were sufficient to find that there were putative class members who were similarly situated. <u>Id.</u>

Here, the Declarations of the named and opt-in Plaintiffs clearly show that during their employment Plaintiffs were paid commissions only and were not eligible for overtime compensation. Plaintiffs who have submitted Declarations also state that based on their time working at the various resort locations and speaking with colleagues, there are many other sales representatives who were in the same position. According to Defendant's own records, there are at present 1,200 sales representatives; 5,500 sales representatives during the past three years; and twenty-seven U.S. based Sales Centers and Preview Centers, located in fourteen states. Defendant also acknowledges, and it is confirmed by Plaintiffs' Declarations, that sales

representatives all have the same primary duty regardless of where they work: to sell vacation ownership plans to prospective buyers.

Not only does this Court have the same type of evidence the Williams court relied on when granting conditional certification (overtime ineligibility for sales staff and statistics to show others in a certain area were similarly situated), but it is clear from the Declarations and Defendant's own evidence that regardless of location, sales representatives possessed the same primary duty and responsibility and carried out such tasks similarly. This evidence alone is enough to grant Plaintiffs' motion for conditional certification. Indeed, courts have authorized dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employer's practice of "misclassifying." In Patton v. Thompson Corp., the Court concluded that § 216(b)'s similarly-situated standard had been satisfied where the plaintiff alleged that she had worked over forty (40) hours per week without overtime compensation, that her position was classified improperly as exempt, that other employees in her position had the same job duties, and that the employer had admitted it paid all employees in plaintiff's position in the same manner and had classified the position as exempt. 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005). The court concluded that if the plaintiff in that case "has a viable FLSA claim . . . as the result of its classification of her position, it is likely that there are other similarly situated employees who have a similarly viable claim." Id.

Here, conditionally certifying this case as a collective action also furthers the FLSA's purpose of achieving significant judicial economies through collective discovery and trial preparation. Hoffmann-La Roche, 493 U.S. 165, 180. Because identical issues of fact and law exist, proceeding collectively will serve to promote judicial economy. Collective adjudication will limit the proliferation of multiple lawsuits and thereby prevent wasting the court's and the

parties' resources. And, when coupled with the evidence regarding classification and eligibility on overtime compensation, there is more than sufficient support for granting Plaintiffs' motion for conditional certification and finding sales representatives of Defendant nationwide are similarly situated at this stage. See Austin, 232 F.R.D. 601, 607 (classification decision of group of employees and plaintiff's allegation of working more than 40 hours per week was sufficient to conditionally certify the class).

### C. Plaintiffs' Case is Appropriate for Court-Facilitated Notice.

The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, 493 U.S. at 170. District courts are encouraged to become involved in the notice process early, to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation. Id. at 171-72. Short of providing an applicable standard, the Court in Hoffmann-La Roche established that a court-approved notice to potential plaintiffs in FLSA collective actions is proper in "appropriate cases." Id. at 169-70. The Court ruled that determining what is an "appropriate case" lies within the "discretion" of the district court. Id. This case is an appropriate case to send court-approved notice.[35]

---

[35] The definition of the proposed class is slightly different from what is alleged in the Complaint. After the complaint was filed, Plaintiffs learned that even those who received commissions only may have been paid on an hourly basis for parts of their employment. Such a revision is perfectly acceptable and in no way precludes conditional certification. See e.g., King v. Koch Foods of Mississippi, LLC, 2007 WL 1098488, at *3-4 (S.D. Miss. Apr. 10, 2007) (the court granted plaintiff's motion for conditional certification despite plaintiff's modification of the original class definition as pled in the complaint).

### 1. *The running of the statute of limitations*

Here, prompt court action is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations on their claims. See Redman v. U.S. West Bus. Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998). Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. Id. As a result, the statute of limitations continues to run on each individual's claim until they file a consent form with the Court. Id. The consequence of this fundamental difference is self-evident: every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover while some claims may be excluded from this action entirely. Court-facilitated notice will prevent the continued erosion, or elimination, of these claims. See Schwed v. Gen. Elec. Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995); see also Order Denying Mot. Transfer Venue, No. 08-cv-00401, at 3-4 (Dkt. 23) (Nov. 19, 2008) (Crabb, J.) ("In FLSA collective actions, potential class members have no shelter; they must either file an opt-in consent form in a pending action or file a separate lawsuit before the statute of limitations has run.").

### 2. *Promotion of judicial economies*

Judicial notice providing sales representatives with an opportunity to pursue their claims in one forum will create the significant judicial economies recognized in Hoffmann-La Roche. Deciding in one action identical issues of law and fact amongst all of Defendant's sales representatives who at one time were only paid commissions benefits the judicial system by resolving this case collectively at least through the discovery phase. See Hoffmann-La Roche, 493 U.S. at 170. Such collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring the

Plaintiffs and opt-ins to file separate cases in multiple federal district courts would not be an economic use of resources under the circumstances.

*3. Other interested sales representatives*

Finally, notice is warranted because Plaintiffs have established by submission of additional consent to join forms and Declarations that other putative class members exist who may be interested in opting into this litigation. These sales representatives were employed during the same liability period and therefore were subject to the same unlawful compensation policy.

**D. Plaintiff's Notice Is Accurate and Informative.**

Attached as Exhibit 3 to the Affidavit of Matthew H. Morgan is Plaintiffs' proposed judicial notice. As required, it is "timely, accurate, and informative." See Hoffmann-La Roche, 493 U.S. at 172. It is carefully drafted to mirror notice forms that other federal districts courts have approved in previous cases handled by courts around the country. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. Plaintiffs request that the Court Order a ninety-day notice period for putative class members to join the case. Such request has been repeatedly accepted by courts around the country. See Carter v. Anderson Merchandisers, LP, 2008 WL 2783193 (C.D. Cal. July 10, 2008) (granting conditional certification and allowing a ninety-day notice period); Fenton v. Farmers Insurance Exchange, 07-4864 JRT/FLN (D. Minn. May 15, 2008) (order granting conditional certification and allowing a ninety-day notice period), attached as Exhibit 6 to Morgan Aff.

Attached as Exhibit 4 to the Affidavit of Matthew H. Morgan is Plaintiffs' proposed reminder notice with a consent form. Plaintiffs request that on or about the sixty-fifth day of the

ninety-day notice period, a reminder notice be sent by Plaintiffs' counsel to the putative class consistent with what is contained in Exhibit 4 to ensure those who wish to join the case do, in fact, file a consent form. See Oliver v. Aegis Communications Group, Inc., 3:08-CV-828-K (N.D. Tex., Oct. 31, 2008) (order granting conditional certification and allowing plaintiffs' counsel to send subsequent reminder notices during the notice period), attached as Exhibit 7 to Morgan Aff.

## II.     PRODUCTION OF A LIST OF SALES REPRESENTATIVES IS NECESSARY TO FACILITATE NOTICE.

As discussed above, all sales representatives who were paid commissions only for some or all of their employment with Defendant within the past three years are "similarly situated" employees for purposes of the FLSA. Thus, their identification to Plaintiffs is necessary to provide them with notice of the action as contemplated by the law. See Hoffmann-La Roche, 493 U.S. at 170. As a result, Plaintiffs request that in addition to entering an order granting conditional certification and approving Plaintiffs' notice, Defendant is ordered to produce to Plaintiffs the following within ten (10) days of its Order:

A list, in Microsoft Excel format, of all persons employed by Defendant as sales representatives who, for all or part of their employment, were paid commissions only from the present to three years back, including their name, address, telephone number, dates of employment as a sales representative, location of employment, date of birth, and last four digits of their Social Security number.

## **CONCLUSION**

At this preliminary stage, Plaintiffs have come forward with the factual basis from which this Court can determine that similarly situated plaintiffs exist. Plaintiffs respectfully request that this Court follow the well established precedent from the United States Supreme Court, as

14

well as recent district court cases from this Circuit and around the country, and 1) promptly authorize this case to proceed as a collective action; 2) order the identification of all qualified sales representatives who worked for Defendant during the applicable statutory period; and 3) authorize the issuance of Plaintiffs' proposed notice to be mailed by Plaintiffs' counsel to all potential opt-in plaintiffs employed by Defendant in the past three years.

                                        Respectfully Submitted:

Dated: November 21, 2008         **NICHOLS KASTER, PLLP**

                                        s/ Matthew H. Morgan
                                        Donald H. Nichols, MN Bar No. 78918
                                        Paul J. Lukas, MN Bar No. 22084X
                                        Matthew H. Morgan, MN Bar No. 304657
                                        NICHOLS KASTER, PLLP
                                        LAWYERS FOR PLAINTIFFS
                                        4600 IDS Center
                                        80 South 8th Street
                                        Minneapolis, MN 55402
                                        Telephone (612) 256-3200
                                        Fax (612) 215-6870
                                        Email: morgan@nka.com