UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Steven Craig Kelly and Jack Clark,
individually and on behalf of others         Case No. 08-cv-401
similarly situated,

    Plaintiffs,

v.

Bluegreen Corporation,

    Defendant.

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF CLAIMS**

    Through the parties' motion, affidavit, and exhibits attached hereto, the above-named Plaintiffs, individually and on behalf of 864 additional opt-in class members, and Defendant Bluegreen Corporation ("Defendant"), seek final approval of their settlement in this collective action for minimum wage and overtime compensation, as required by the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and dismissal of this action in its entirety with prejudice.[1]  The parties respectfully submit that the terms of settlement are fair, reasonable, and resolve a *bona fide* dispute between the parties with respect to liability and damages.

---

[1] This case involves allegations under the FLSA only, and there is no Rule 23 component.  The parties understand through communications with the Court's clerk that the Court is likely to review the terms of settlement on the papers alone; however, the parties are available by telephone or in person should the Court desire to schedule a hearing in conjunction with the instant motion for settlement approval.

## DISCUSSION

**I.     HISTORY AND PROCEDURAL STATUS OF THIS LAWSUIT**

The two (2) named Plaintiffs, Steven Craig Kelly and Jack Clark (collectively "named Plaintiffs"), were employed by Defendant as commission-only sales representatives at Defendant's Christmas Mountain Sales Center in Wisconsin Dells, Wisconsin, and Defendant's Atlanta Preview Center in Atlanta, Georgia, respectively.  The named Plaintiffs brought collective claims against Defendant under the FLSA on July 17, 2008, alleging that Defendant: (i) misclassified them and similarly situated commission-only sales representatives as exempt from overtime compensation in violation of the FLSA; and (ii) failed to pay them and similarly-situated commission-only sales representatives the applicable minimum wage in violation of the FLSA.

Defendant has at all times denied the minimum wage and overtime allegations asserted by the named Plaintiffs and the opt-in class members.  As set forth in Defendant's Answer and Affirmative Defenses, (Dkt. No. 12), it has been Defendant's position that: (i) Plaintiffs and the opt-in class members were properly treated as exempt from the FLSA's minimum wage and overtime provisions under the FLSA's retail sales and outside sales exemptions, see 29 U.S.C. §§ 207(i) and 213(a)(1); (ii) even assuming, *arguendo*, Defendant improperly treated the named Plaintiffs and the opt-in class members as exempt from minimum wage and/or overtime, the named Plaintiffs and the opt-in class members overstated the number of hours they worked each week;[2] (iii) even assuming, *arguendo*, Defendant improperly treated the named Plaintiffs and

---

[2] Defendant maintained an electronic timekeeping system whereby the sales representatives at issue were required to punch-in and punch-out to record their hours worked each day. Accordingly, Defendant possesses, and has produced to Plaintiffs' counsel, time records for the named Plaintiffs and each opt-in class member.  Those time records have enabled the parties to assess the representations made by the named Plaintiffs and opt-in class members with respect to

2

opt-in class members as exempt from minimum wage, the named Plaintiffs and opt-in class members were fully compensated in an amount equal to or greater than the applicable minimum wage for all hours worked pursuant to a minimum wage "true up" that was performed monthly;[3] (iv) the named Plaintiffs and the opt-in class members failed to proffer sufficient evidence of "willfulness" to warrant application of a three-year statute of limitations period, and that a two-year statute of limitations should be applied to the extent liability could be established; see 29 U.S.C. § 255; and (v) at all relevant times Defendant acted in good faith and with reasonable grounds for believing that its payroll practices did not violate the FLSA, thereby providing a complete defense to liability and/or a complete or partial defense to an award of liquidated damages. See 29 U.S.C. §§ 259 and 260.

On November 21, 2008, the named Plaintiffs moved for conditional class certification, requesting permission to proceed as a collective action pursuant to FLSA, 29 U.S.C. § 216(b), and to provide notice of the litigation to all persons employed by Defendant as sales representatives who, for all or part of their employment, were paid on a commission-only basis during a three-year statute of limitations period. (Dkt. No. 24). On February 20, 2009, this Court granted Plaintiffs' motion, allowing them to proceed as "similarly situated" employees and to send notice of the right to opt-in to the lawsuit to the putative class members. (Dkt. No. 38).

---

the number of hours worked and the amounts allegedly owed in minimum wage and overtime compensation.

[3] In short, on a monthly basis Defendant added-up a sales representative's total compensation for the month and divided that number by the total number of hours worked during the month. If the resulting number was lower than the applicable minimum wage, then Defendant made a minimum wage "true up" payment to the sales representative to ensure that the sales representative received at least the applicable minimum wage for all hours worked during the month.

In additional to the named Plaintiffs, there remain in this case a total of 864 individuals who filed opt-in consent forms.[4] (Morgan Aff. at ¶ 3).

Before and after the date of the Court's Order conditionally certifying the class, the parties conducted substantial discovery. (Morgan Aff. at ¶ 4). Specifically, Defendant produced thousands of pages of relevant documents, including written compensation plans, personnel records, training manuals, e-mail correspondence pertaining to compensation issues, and detailed electronic time records and compensation records for the named Plaintiffs and each opt-in class member. (Morgan Aff. at ¶ 5). Plaintiffs also produced relevant documents, and the parties engaged in written discovery as well. (Morgan Aff. at ¶ 6). Further, Plaintiffs' counsel took corporate representative depositions pursuant to Fed. R. Civ. P. 30(b)(6), and Defendant's counsel took the named Plaintiffs' depositions. (Morgan Aff. at ¶¶ 5, 6).

After counsel for the parties conducted the discovery set forth above, and had a sufficient opportunity to analyze the pertinent legal and factual issues in light of the relevant information and documents, the parties filed a stipulation with the Court on May 1, 2009, advising the Court therein that the parties agreed to attend a mediation conference on July 10, 2009, and requesting an extension of various briefing deadlines. (Dkt. No. 93).

## II. HISTORY OF SETTLEMENT

The parties have engaged in arm's length negotiations directed towards settlement of the claims asserted by the named Plaintiffs and the opt-in class members. At the mediation conference conducted on July 10, 2009, the parties, with the assistance of a mediator experienced in collective action FLSA litigation, reached a complete settlement as to all claims by the named

---

[4] More than 864 individuals filed opt-in consent forms in this case, but notices of withdrawal have been filed on behalf of several individuals throughout the course of the litigation, thereby leaving 864 opt-in class members (plus Plaintiffs Kelly and Clark) as of the date of filing the instant motion.

Plaintiffs and all opt-in class members for an amount up to $1,530,000 ("Settlement Amount"), inclusive of attorneys' fees and costs for class counsel.[5] (Morgan Aff. at ¶ 7; Ex. 1, p. 4 at A). Consistent with the named Plaintiffs' legal services agreements with Plaintiffs' counsel,[6] costs to be incurred, amounting to $23,000, will be allocated to Plaintiffs' counsel from the $1,530,000 Settlement Amount. In addition, and also consistent with legal services agreements executed between Plaintiffs' counsel and the named Plaintiffs, 33 1/3% of the $1,530,000 Settlement Amount (specifically, $510,000) will be allocated to Plaintiffs' counsel as attorneys' fees.

On July 15, 2009, the parties filed a Joint Notice of Settlement and Motion to Stay Pre-Trial and Trial Deadlines Pending Settlement Approval advising the Court that a complete settlement had been reached. (Dkt. No. 132). On July 16, 2009, the Court approved the parties' Joint Notice of Settlement, stayed all pretrial and trial deadlines, and ordered the parties to file their Joint Motion for Settlement Approval no later than October 12, 2009. (Dkt. No. 133).

As a result of the parties' agreement to settle, they prepared and executed a Confidential Settlement Agreement and Release of Claims ("Settlement Agreement"). (Ex. 1). Pursuant to that Settlement Agreement, on July 24, 2009, Plaintiffs' counsel submitted to Defendant's counsel for review and approval a proposed allocation of the $1,530,000 Settlement Amount reflecting the amount proposed to be paid to each named Plaintiff, each eligible opt-in, and to Plaintiffs' counsel for attorneys' fees, costs, and expenses related to administration of the settlement. (Morgan Aff. at ¶ 8). The settlement allocation approved by Defendant is attached to the Settlement Agreement as Exhibit A.

---

[5] The parties agreed that if any opt-in class members rejected the amount to be paid to them under the terms of settlement, then the Settlement Amount would be reduced by the amount allocated to the rejecting opt-in class member. Thus, the Settlement Amount of $1,530,000 was agreed-upon as a maximum settlement amount.

[6] Plaintiffs' counsel has substantial experience in representing employees in collection actions under the Fair Labor Standards Act. (Morgan Aff. at ¶ 2)

The amount allocated to each Plaintiff and each eligible opt-in was based upon analysis by Plaintiffs' counsel of each individual's length of employment with Defendant during a three-year statute of limitations period, overtime calculated by review of time and payroll records produced by Defendant for the named Plaintiffs and opt-in class members, as well as minimum wage compensation calculated by review of weekly paychecks reflecting compensation allegedly below the minimum wage.[7] The allocated amount to each eligible opt-in represents a compromise of his or her full claims.[8] (Morgan Aff. at ¶¶ 8, 12). With respect to the two (2) named Plaintiffs, Clark will be receiving the total, gross amount of $7,583.10 under the terms of settlement (which includes a $1,500 payment made in recognition of the time spent by Clark participating in this lawsuit), and Kelly will be receiving the total, gross amount of $4,929.18

---

[7] Although Defendant paid a "true-up" amount based upon monthly hours worked and monthly compensation, Plaintiffs contend that they were due minimum wage on a weekly basis, as opposed to monthly. Plaintiffs recognize that they were compensated for some minimum wage due to them under the FLSA, (see n. 3 supra), therefore, such "true-up" amount was taken into consideration when calculating each individual's allocation. Additionally, for six (6) opt-ins who joined the lawsuit, but who the parties' subsequently discovered were ineligible because they either did not work within the three-year limitations period and/or did not work as commission-only sales representatives, Defendant nevertheless agreed to allocate to these opt-ins a nominal settlement amount to resolve their purported claims. The six (6) opt-ins are Mark Hotop, Milton Irizarry, Dianna Johnson, John Edwin Lang, William Sanders Rule, and Athena Dolores Villanueva. Despite diligent efforts, Plaintiffs' counsel was unable to secure authorization from these six (6) opt-ins to file a withdrawal notice, so these six (6) opt-ins were allocated a nominal amount as described above. Diana Johnson ultimately rejected the nominal amount proposed to be paid to her, so her claim must be dismissed and she must be treated as a rejecting opt-in under Paragraph B.4 of the Settlement Agreement.

[8] Attorneys' fees ($510,000) and estimated costs ($23,000) were deducted from the Settlement Amount of $1,530,000, leaving $997,000 for disbursement to the class. Named Plaintiffs Kelly and Clark each will receive a Service Payment of $1,500, and six (6) disbursements of $150 were allocated to opt-ins who the parties subsequently discovered were ineligible and where Plaintiffs' counsel was unable to secure authorization to withdraw their claims (see n. 7). The remaining allocable funds ($993,100) were allocated on a pro rata basis. Each individual's pro rata share was calculated by dividing his/her total damages by the sum of all clients' damages. This figure was multiplied by the allocable funds amount to determine an individual's allocation. An allocation amount "floor" was imposed at $250. If an individual's original allocation was below this amount, the funds required to increase their allocation from the initial amount to the $250 level was drawn from allocable funds.

(which includes a $1,500 payment made in recognition of the time spent by Kelly participating in this lawsuit).[9] (Ex. 1 at ¶ B1).

After the parties agreed to the allocation of the settlement amount, (see Ex. A to Settlement Agreement), on August 20, 2009, Plaintiffs' counsel mailed to each eligible opt-in Plaintiff a Notice of Settlement ("Notice") advising that the lawsuit had been settled and the amount he or she would be paid under the terms of the settlement if he or she timely responded. The Notice of Settlement is attached to the Settlement Agreement as Exhibit B. Following distribution of the Notice, the opt-in Plaintiffs had 45 days, until October 4, 2009, in which to accept or reject the settlement. (Morgan Aff. at ¶ 9). Plaintiffs' counsel has made diligent efforts to obtain a timely response from each eligible opt-in in response to the Notice.[10]

According to the terms of the Settlement Agreement, if, despite such diligent efforts by Plaintiffs' counsel, an eligible opt-in does not respond to the Notice of Settlement, or responds untimely, then the eligible opt-in's claim shall be dismissed with prejudice, with no payment to him or her, and Defendant shall make a donation to a charity of Defendant's choice in the amount allocated to the non-responding or untimely responding eligible opt-in.[11] (Ex. 1, ¶ B3).

---

[9] The additional payments made to the named Plaintiffs are reasonable and warranted because they were responsible for initiating this lawsuit and providing invaluable assistance to Plaintiffs' counsel in prosecuting the minimum wage and overtime claims on behalf of the collective class. Defendant also took the deposition of each named Plaintiff in Milwaukee, Wisconsin, which required Mr. Clark to travel to Wisconsin from Los Angeles, California.

[10] Following distribution of the Notice to each opt-in class member, Plaintiffs' counsel sent at least two (2) reminder letters to ensure that each and every opt-in class member received the Notice and had an opportunity to accept or reject the settlement offer. Plaintiffs' counsel also attempted to call every opt-in class member who had not returned the Notice to ensure that the Notice was received. (Morgan Aff. at ¶ 10).

[11] Even though the deadline for eligible opt-in class members to accept the settlement was October 4, 2009, Defendant has agreed to treat as timely all acceptances that were received by Plaintiffs' counsel prior to the filing of the instant motion. Accordingly, twelve (12) opt-in class members who submitted untimely acceptances prior to the filing of the instant motion will be paid their allocated settlement amount rather than their allocated settlement amount being paid to

If an eligible opt-in instructs Plaintiffs' counsel to reject his or her share of the settlement and to allow him or her to withdraw from the lawsuit, then Plaintiffs' counsel will file a notice of withdrawal on behalf of that eligible opt-in, and the statute of limitations with respect to his or her claims asserted in the lawsuit shall be tolled for a period of 30 days from the date the withdrawal is filed with the Court. (Ex. 1, ¶ B4).

Having sent out the Notice to all eligible opt-ins, and the 45-day response period having passed, the results are as follows:

- Eight hundred, thirty-six (836) opt-ins, including Kelly and Clark, have returned a *timely* confirmation form accepting the settlement and the amount allocated to them, as that amount appears on Exhibit A to the Settlement Agreement.

- Twelve (12) opt-ins have returned an *untimely* confirmation form accepting the settlement, but nevertheless will be treated by Defendant as having submitted the form timely so that they may receive their allocated share of the settlement, as that amount appears on Exhibit A to the Settlement Agreement. See, supra, n. 11.

- Eleven (11) opt-ins have rejected the settlement, thereby requiring Plaintiffs' counsel to promptly file for such opt-ins a notice of withdrawal from the lawsuit, and also triggering a reduction in the $1,530,000 Settlement Amount by the aggregate amount previously allocated to the rejecting opt-ins.[12] If withdrawal forms have not been obtained by Plaintiffs'

---

charity. The untimely opt-ins, with their allocated settlement amounts in parentheses, are as follows: Andrews III, Newell ($250.00); Fields, Sommer ($1095.53); German-Johnson, Sheila ($250.00); Hartwick, Kenneth ($250.00); Hramiec, Paul ($250.00); Lambert, Pamela ($490.48); Olsen, Bob ($250.00); Ourzik, Youb ($250.00); Rea IV, Tull ($250.00); Sanchez, Nelida ($1681.23); Sharpe, Brandon ($250.00); and Stansberry, Ralph ($1563.56).

[12] The rejecting opt-ins, with their allocated settlement amounts in parentheses, are as follows: Bailey, Heather ($281.62); Denton, Debra ($250.00); Fidler, Melanie ($250.00); Foggio, Donald ($250.00); Fotre, Francis ($250.00); Gold, Nathan ($525.81); Johnson, Dianna ($150.00); Jouney, William ($250.00); Mcgregor, James ($250.00); Miranda, Hector ($250.00); Rottman,

counsel from such opt-ins prior to approval of this settlement by the Court, the parties request that the Court dismiss, without prejudice, the eleven (11) opt-ins who have rejected the settlement.

- Seven (7) opt-ins have not responded at all to the Notice, despite diligent efforts by Plaintiffs' counsel to secure a response from these opt-ins.[13]  Pursuant to the agreed-upon terms of settlement, the claims for these seven (7) non-responding opt-ins shall be dismissed with prejudice, with no payment made to the seven (7) opt-ins.  Pursuant to the agreed-upon terms of settlement, upon dismissal of these opt-ins' claims with prejudice, Defendant will make a donation to a charity or charities of Defendant's choice in the aggregate amount allocated to the seven (7) opt-ins, as the amounts appear on Exhibit A to the Settlement Agreement.  (Ex. 1 at ¶ B3).

The parties now move for final approval of the settlement, as the terms are set forth herein and in the attached Settlement Agreement, and dismissal of this action in its entirety with respect to the named Plaintiffs all opt-in class members.

### III.  THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE PARTIES' CLAIMS AND DEFENSES

Court approval of FLSA settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by the named Plaintiffs and the opt-in class.  See Walton v. United Consumers Club, Inc. 786 F.2d 303, 306 (7th Cir. 1986).  Under the FLSA, employees can only bargain, waive, or modify their recovery and rights in narrow circumstances.  Lynn's

---

Robert ($250.00).  Accordingly, the $1,530,000 Settlement Amount is reduced by $2,957.43, which is the sum of the amounts previously allocated to the rejecting opt-ins.

[13] The non-responding opt-ins, with their allocated settlement amounts in parentheses, are as follows: Cresswell, Deborah ($250.00); Green, Alexsondria ($250.00); Hunter, Deborah ($250.00); Murphy, Moreen ($250.00); Pickle Jr. , William ($250.00); Witkowski, Stacey ($250.00); and Zenda, Olivia ($2228.67).

Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). In a private action between the employer and employee, a settlement falls within those narrow circumstances only if the parties agree on the terms, the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," and the settlement is entered as stipulated judgment. Id. at 1353, 1355.

In approving a settlement offer, the Court must give comprehensive consideration to all relevant factors and yet the settlement hearing must not be turned into a trial or a rehearsal of the trial. City of Detroit v. Grinnell Corp., 495 F.2d 448, 462 (2d Cir. 1974).[14] The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses. Id. at 455. Other factors include: the complexity, expense and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand greater judgment; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Id. at 463; Brask v. Heartland Automotive Servs., Inc., 2006 WL 2524212, at *2 (D. Minn. Aug. 15, 2006).

### A. The Proposed Settlement is Fair and Reasonable.

The settlement was the product of arm's length negotiations by experienced counsel, which had the effect of providing relief to the named Plaintiffs and opt-in class members, and eliminating the inherent risks both sides would bear if this complex litigation were to continue through resolution on the merits. The parties participated in mediation with a qualified mediator,

---

[14] The Grinnell case concerns class action settlements under Fed. R. Civ. P. 23. However, both the FLSA and Rule 23 require fair and reasonable settlements, thus the standards set forth are applicable.

and that mediation process ultimately allowed the parties to obtain the present resolution. Under these circumstances, a presumption of fairness should attach to the proposed settlement. See Lynn's Food Stores, Inc., 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness); see also In re BankAmerica Corp. Securities Litig., 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and awards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable. First, the complexity, expense, and likely duration of the litigation weighs heavily in favor of finding that the settlement is fair and reasonable. Several issues have not yet been decided, including: (i) whether the named Plaintiffs and opt-in class members were exempt from minimum wage and/or overtime under the FLSA's retail sales or outside sales exemptions;[15] (ii) whether Defendant complied with the FLSA's minimum wage provisions through payment of a monthly minimum wage "true-up" when total monthly compensation divided by total hours worked did not yield a number equivalent to at least the applicable minimum wage; (iii) the total number of hours worked each workweek by the named Plaintiffs and opt-in class members; (iv) the proper method of calculating damages; (v) the total amount of damages, if any, including whether liquidated damages would be appropriate; and (vi) the applicable statute of limitations. Resolution of these issues would have required additional

---

[15] If Defendant had prevailed on the minimum wage and overtime exemptions, either on summary judgment or at trial, then that could have resulted in zero recovery for the named Plaintiffs and opt-in class members.

11

discovery, significant summary judgment briefing, and perhaps an extended and complex trial with an uncertain outcome. Further, absent settlement, Defendant likely would have filed a motion seeking decertification of the class, which, if granted, could have resulted in zero recovery for a significant portion of the class. In short, while a number of issues remain unresolved in this litigation, the discovery conducted thus far has enabled counsel for the parties to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement under the terms set forth herein is in the parties' best interest.

Indeed, Plaintiffs' counsel has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well as records produced by Defendant, Plaintiffs' counsel believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." In re BankAmerica, 210 F.R.D. at 702. Indeed, the final settlement amount was the product of good-faith negotiations between the parties at mediation, and the settlement amounts for each named Plaintiff and opt-in class member vary based on employment duration, and each Plaintiff's time and payroll records. Additionally, each opt-in class member was given the opportunity to revoke his or her acceptance of its terms. (Ex. 1, at ¶ B4). Eight hundred, forty-eight (848) opt-in class members have indicated their approval of the settlement terms while only eleven (11) have rejected it, which is not large when compared to the size of the class as a whole.

Lastly, Plaintiffs' counsel's attorney's fees and costs are reasonable because Plaintiffs' counsel secured an excellent result for Plaintiffs and the opt-in class members and bore a significant risk of nonpayment in this case if Defendant were to prevail on the merits. Moreover,

the issues here are complex, and the parties engaged in contentious litigation for approximately one (1) year before they agreed upon a resolution. As a result, Plaintiffs' counsel expended a considerable amount of resources in motion practice, discovery, and an analysis of each of the 866 individual claims. Finally, class members in this case agreed to be represented by Plaintiffs' counsel on a contingency basis, and the fees and costs for attorneys' fees reflect the terms of that agreement. Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute and approve the settlement.

### B.     A *Bona Fide* Dispute Between The Parties Existed Over FLSA Coverage

Plaintiffs alleged that Defendant violated the FLSA because they classified sales representatives as "exempt," and uniformly failed to pay them minimum wage and overtime for hours worked in excess of 40 hours per week. Defendant, on the other hand, argued that its sales representatives were properly treated as exempt from the FLSA's minimum wage and overtime requirements pursuant to the retail sales and outside sales exemptions.

If Plaintiffs' ultimately prevailed, then Defendant would be faced with the prospect of a significant monetary verdict in favor of the named Plaintiffs and the opt-in class, as well as the obligation to pay litigation fees and costs. If Defendant ultimately prevailed, then Plaintiffs faced dismissal of their claims and <u>no recovery of any kind</u>. Counsel for the parties agree that either outcome was possible in this action, particularly given that some issues likely would have required resolution by a jury. Accordingly, the Court should conclude that a *bona fide* dispute between the parties existed.

### IV.    CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel and resolves a *bona fide* dispute between the parties. After engaging in lengthy

discovery and a thorough analysis of relevant information, the parties resolved the issues between them in mediation before an experienced mediator. The settlement is fair, reasonable and adequate, and provides collective class members with monetary relief for their claims. For these reasons, and those set forth above, the Court should approve the parties' Settlement Agreement and dismiss this action consistent with what the parties have set forth herein.

Dated: <u>October 12, 2009</u>　　　　　　　　　　　Respectfully submitted,

| | |
|---|---|
| NICHOLS KASTER, PLLP | STEARNS WEAVER MILLER WEISSLER |
| 4600 IDS Center | ALHADEFF & SITTERSON, P.A. |
| 80 South 8th Street | Museum Tower, Suite 2200 |
| Minneapolis, MN 55402 | 150 West Flagler Street |
| Telephone: (612) 256-3200 | Miami, Florida 33130 |
| Facsimile: (612) 215-6870 | Telephone: (305) 789-3200 |
| | Facsimile: (305) 789-3395 |
| By: s/Matthew H. Morgan | By: s/Andrew L. Rodman |
| Donald H. Nichols, MN Bar No. 78918 | ROBERT S. TURK, ESQ. |
| E-mail: nichols@nka.com | Florida Bar No. 261343 |
| Paul J. Lukas, MN Bar No. 22084X | E-mail: rturk@stearnsweaver.com |
| E-mail: lukas@nka.com | ANDREW L. RODMAN, ESQ. |
| Matthew H. Morgan, MN Bar No. 304657 | Florida Bar No. 0192198 |
| E-mail: morgan@nka.com | E-mail: arodman@stearnsweaver.com |
| Reena I. Desai, MN Bar No. 0388311 | |
| E-Mail: rdesai@nka.com | *ATTORNEYS FOR DEFENDANT* |
| *ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE CLASS* | |